Lathrop v. Groton Savings Bank.

---

SYLVANUS C. LATHROP and wife, appellants,

*v.*

THE GROTON SAVINGS BANK, respondent.

A person being the equitable owner and in the occupation of land, the record title being in a third party, must refrain from all acts calculated to produce a false impression as to the state of the title, in order to hold a person dealing with such ostensible owner, to the duty of inquiring with respect to the interest of such occupier.

---

On appeal from a decree of the chancellor, whose opinion is reported in *Groton Sav. Bank v. Batty, 3 Stew. 126.*

18

*Mr. S. B. Ransom,* for appellants.

I. Before and at the time of the commencement of the foreclosure proceedings by the Groton Savings Bank, the title to the premises in question was in the appellant, Sarah Ann Lathrop, in fee-simple, free and clear of all encumbrances :

(1st) She had been in the quiet, peaceable, unchallenged possession of the premises for twenty-four years, all the time claiming it as her own, using it as her own, paying no rent, and no one disputing her title. For all this time her possession and enjoyment of the property had been adverse.

(2d) She and her husband had built a dwelling-house upon it with their own money, at a cost of from $3,000 to $4,000, which house she and her family had occupied as a residence, and as owner in fee, for a period of twenty-two years.

(3d) They had put upon it a shop, worth $500 or $600, at their own expense.

(4th) So, if John and William Batty, or either of them, ever had a right of entry on said land, it was barred by the statute of limitations.

" Every real, possessory, ancestral, mixed or other action for any lands, tenements or hereditaments, shall be brought or instituted within twenty years next after the right or title thereto, or cause of such action, shall accrue, and not after." (*Rev. p. 597 § 17.*)

" The actual possession and improvement of land, as owners are accustomed to possess and improve their estate, without any payment of rent or recognition of title in another, or disavowal of title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his (the occupant's) entry and holding as absolute owner." *La Frombois* v. *Smith, 8 Cow. 589.*

Such was the character of Mrs. Lathrop's possession.

II. The possession of the land by the Lathrops for twenty years, as owners, bars all suits by the Batties or

their grantees or mortgagees, for the recovery of the money the deed was given to secure, as well as all suits for the recovery of the land. Such lapse of time raises a presumption of payment.

III. The Groton Savings Bank, as mortgagee of Batty, stands in no better position than Batty himself. When the bank took its mortgages, it was chargeable with notice of the possession by the Lathrops, and of the title under which they held.

When the first mortgage was given (November 1st, 1863), the Lathrops had been in the undisputed possession, as owners, for eleven years, during which time they had expended about $4,000 of their own money on the premises. When the second mortgage was given (October 1st, 1869), the possession of the Lathrops and their use of the property remained unchanged. They had then occupied it, as owners, for seventeen years. This possession was notice to the world of the title under which they held. On this point see *4 Kent Com. 179 and notes; Tuttle* v. *Jackson, 6 Wend. 213, 226; Wright* v. *Douglass, 10 Barb. 97; Troup* v. *Hurlbut, 10 Barb. 354; Merritt* v. *Northern R. R. Co., 12 Barb. 605; Frazer* v. *Weston, 1 Barb. Ch. 220, 232; Colby* v. *Kenniston, 4 N. H. 262; Norcross* v. *Widgery, 2 Mass. 508; Eyres* v. *Dolphin, 3 Ball & B. 301; McMahon* v. *Griffing, 3 Pick. 149; Malpas* v. *Ackland, 3 Russ. 273; Billington* v. *Welsh, 5 Binn. 129; Davis* v. *Blunt, 6 Mass. 487; Howard Ins. Co.* v. *Halsey, 4 Sandf. 573; Daniels* v. *Davison, 16 Ves. 254, S. C. 17 Ves. 433; Allen* v. *Anthony, 1 Mer. 282; Johns* v. *Norris, 12 C. E. Gr. 485; Pendleton* v. *Fay, 2 Paige 202.*

These cases establish the general principle that possession of land by a tenant is notice to all the world of the possessor's title and claim. Therefore, the possession of the Lathrops was notice to the Groton Savings Bank of Mrs. Lathrop's title and claim. This possession was sufficient to put the bank on inquiry into the nature of her claim; and its neglect to make such inquiry, evinces bad faith or gross

negligence. But the learned chancellor, in his opinion, seeks to take this case out of this principle, on several grounds. He thinks there is reason to believe that, admitting the deed to the Batties was merely conditional, recourse was had to absolute deeds to Bishop and the Batties, instead of mortgages, with a view to securing the property from Lathrop's creditors, and with the design of thus concealing what they now insist was the true ownership of the property, and so misleading the public.

The learned chancellor cites several cases to show that this case does not come within the rule that possession is notice of the possessor's title. First, he cites the case of *Cook* v. *Travis, 22 Barb. 338, 20 N. Y. 400.* In this case the court recognized the general rule, that the possession of land is notice to others of the possessor's title, but held that it did not avail in that case, because that case came within the operation of another rule of universal application: that, where a party puts upon record a deed by which he conveys the absolute title to his grantee, he is thereby estopped from setting up any secret arrangement by which his grant is impaired; or, in other words, he is estopped from impeaching or contradicting his own deed, or denying that he granted the premises which his deed purports to convey. In this case the controversy was between two sheriff's titles, the junior one being recorded, the elder not. The purchaser under the junior execution, mortgaged the premises; the defendant in the executions continued in the possession. The court held that his possession must be considered as in subserviency to the recorded title, on the principle above stated.

The next case referred to by the chancellor is the case of *Williamson* v. *Brown, 15 N. Y. 354.* In this case Justice Selden, in delivering the opinion of the court, laid down the general rule as follows: "Where a purchaser has knowledge of any facts sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the

inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim to be considered as a *bona fide* purchaser. He then adds: " This presumption, however, is a mere inference of fact, and may be repelled by proof that the purchaser failed to discover the prior right, *notwithstanding the exercise of proper diligence on his part.*"

The last clause of Justice Selden's remark is omitted in the chancellor's opinion. The exercise of due diligence is the controlling element in the question.

*Fassett* v. *Smith, 23 N. Y. 252,* is the next case referred to by the chancellor. All that was held in this case was, that the possession by a husband of the wife's real estate, is to be taken as her possession, so as not to put a person on inquiry as to the rights of a third person from whom the husband, to cover his own fraud, took a deed unknown to the purchaser. I do not see that it has any application to the present case.

The chancellor then cites: *Van Keuren* v. *Central R. R. of N. J., 9 Vr. 165; N. Y. Life Ins. Co.* v. *Cutler, 3 Sandf. Ch. 176; Newhall* v. *Pierce, 5 Pick. 450; Scott* v. *Gallager, 14 Serg. & R. 333; McCulloh* v. *Cowher, 5 Watts & S. 427.* These cases all recognize the general rule that the possession of land is notice of every title under which the occupant claims. But they all hold that a subsequent purchaser for value is not chargeable with notice where the possessor has put on record a title inconsistent with his possession.

This principle was very forcibly stated by Judge Woodward, in his charge to the jury, in the case of *McCulloh* v. *Cowher, 5 Watts & S. 427,* cited by the chancellor. It was also very forcibly stated by Mr. Justice Van Syckel, in the case of *Van Keuren* v. *Central R. R. of N. J., 9 Vr. 165.*

IV. This case is not within the principle invoked by the chancellor. Lathrop and his wife have not, nor have either of them ever, executed any deed or conveyance of any kind to estop them from availing themselves of the well-settled rule that their possession is notice to the world of their

title. The title originally was in the Coles estate. It remained there until February 19th, 1856. From 1853 to 1856, Lathrop and his wife built a house on the lot, and occupied it as owners; spent $3,000 upon it, the record title being all the time in the Coles estate. Suppose Coles's heirs, instead of giving a deed to Bishop, had executed a mortgage to the Groton Savings Bank, could it be pretended that the bank would not have been bound to inquire by what right the Lathrops held and claimed to be owners? And, while Bishop held the legal title, from February 19th, 1856 to August 19th, 1858, was there anything on the record to excuse a purchaser from Bishop from inquiry as to what title Lathrop claimed? And after the transfer to the Batties, were the records in any way changed? Was there anything on the records, from that time to this, to excuse such inquiry?

The fact that the legal title never was in the Lathrops, makes the rule that possession is notice of the possessor's title, apply with all the more force.

V. The Groton Savings Bank does not occupy the position of a subsequent purchaser for value. The equitable interest of Mrs. Lathrop in the premises is not disputed. In the bill filed against the Batties by Mrs. Lathrop, to compel them to convey the premises to her, they did not answer, but suffered a decree to go against them. It is incumbent, therefore, upon the Groton Savings Bank, before they can have any standing in court, to show that they stand in the position of subsequent purchasers for a valuable consideration. The burthen of proof is on them. They have not attempted to prove it. There is not a particle of proof to show that they ever paid one cent for the mortgage.

VI. The Lathrops were not bound to go to Connecticut and serve a notice on the Groton Savings Bank, of their title to the property, when they heard that the mortgage had been given to the bank. It was the duty of the bank

Lathrop v. Groton Savings Bank.

to inquire of their title before taking the mortgage. *Phil-hower* v. *Todd, 3 Stock. 312, 316 ; Story's Eq. Jur.* § *385.*

*Messrs. Collins & Corbin,* for respondent.

I. It is only possession of which a purchaser. or mortgagee *has knowledge,* that is constructive notice to him of the possessor's rights in lands.   A too meagre statement of the facts, in some of the reported cases—the purchaser's knowledge of the fact of possession being really *assumed*—has led, we think, to an erroneous opinion that possession is notice *per se.*   The earliest case on the subject is *Taylor* v. *Stibbert, 2 Ves. Jr. 437.*   In this case, Lord Rosslyn says, page 440 : " Whoever purchases an estate from the owner, *knowing it to be in the possession* of tenants, is bound to inquire into the estate these tenants have."

The next case is *Daniels* v. *Davison, 16 Ves. 249,* a judgment of Lord Eldon's.   This seems to be the leading case. All the modern cases go back to and rest upon it.   It is generally cited far too broadly, an error for which the headnote of Mr. Vesey is perhaps responsible.   The case is founded directly on *Taylor* v. *Stibbert,* and Lord Eldon says expressly, page 253 : " Cole's answer is, that *he knew the plaintiff was in possession,* but did not know the nature of his possession, not taking the trouble to inquire whether he was tenant or purchaser."

In *Rogers* v. *Jones, 8 N. H. 264,* the court notices the inexactness of statement in the reported cases, and says : " Expressions in some of the authorities " (citing them) " would seem to indicate that there should be knowledge of possession, but others " (citing them) " contain no such qualification."   That cases of the latter class do not contain such qualification, is due either to meagreness of statement of the facts, or, in the later cases, to a misapprehension of the principle involved—that is, a taking it for granted, by both court and counsel, that the rule is broader than it really is or ought to be.   The point is not *discussed* in any of these cases.   Indeed, we find no case where it is dis-

tinctly held that knowledge of the possession need *not* exist, unless it be *Birch* v. *Holloway's Devisee, 2 J. J. Marsh. 180* (where the meaning of the court is not at all clear, and no authority is cited), and *Wickes* v. *Lake, 25 Wis. 71*, where there is a very able *dissenting* opinion by Chief Justice Dixon, to which we call particular attention, especially to pages 97 and 98.

In *Grimstone* v. *Carter, 3 Paige 421*, Chancellor Walworth says, page 437 : " If the person claiming the prior equity is in the actual possession of the estate, *and the purchaser has notice of that fact*, it is sufficient to put him on inquiry as to the actual rights of such possessor, and is good constructive notice of those rights."

In *Billington* v. *Welsh, 5 Binn. 129*, Chief Justice Tilghman, while inclined to hold that notorious possession may imply knowledge of it, yet, in a case where there was undoubted possession in fact, but, by reason of the peculiar situation of the land with regard to adjoining property, it was not readily discernible, held that that was not constructive notice ; and Justice Yates, in his opinion, takes substantially the ground now urged upon this court.

In *Davis* v. *Blunt, 6 Mass. 487*, the court justifies its decision because of knowledge of the possession.

We call attention to *Sugden on Vendors (7th Am. ed.) 553* (*1052*) *note*, and to *Le Neve* v. *Le Neve, 2 White & Tudor's Lead. Cas. in Eq. 35, end of Am. note*, where this subject is discussed in some of its phases.

We are aware that it may be urged with force that, granting our premise, still, actual residence in a dwelling-house for many years ought to be taken as presumption of knowledge of possession, and some cases seem to bear out that position ; but it must be remembered that the respondent is a corporation of another state, having its office a hundred miles away, and that it dealt with the legal record owners at their place of residence there. In *Le Neve* v. *Le Neve (p. 197)*, a distinction is drawn between the case of neighbors and visitors of a possessor and that of persons living

at a distance, in the matter of presumption of knowledge of the possession.

Of course, if there be no presumption of knowledge by the respondent of the appellants' possession, it was incumbent on the appellants to prove the fact of such knowledge, and this they have not attempted to do.

On the facts of this case, however, we think the point above made, whether sound or not, is not at all involved. Of course, the possession of the appellants gave them no *rights*. It was, at most, merely notice of whatever rights they had. If they had no interest in the property, or if they had an interest which is not entitled to the aid of a court of equity, their possession will not help them. We will, therefore, now discuss the case on the facts, conceding, for the argument, that their possession was constructive notice of their rights.

II. (1st) If Mr. Lathrop's story is true, that William and John Batty took a deed of the house lot in 1858, as security, then, in 1863, when the respondent took its $1,000 mortgage from the Batties, it acquired a lien on the interest which the Batties then had in the house, which was $1,100, with interest from August 19th, 1858, and at this date would amount to about $2,700. To this, add money paid on the property by Batty for taxes, water rents and redemption of sales, and we have a total of over $3,500. This, with assessments for street improvements, and interest in arrear when the Batties bought, in 1858, would probably cover the two mortgages of the respondent. Lathrop does not claim that he ever paid rent, or made any payments at all, to John or William Batty, and if his testimony stopped here it would matter little whether it is true or false.

(2d) But Lathrop says, and reiterates, that he and his wife, and not Batty, paid all the taxes; he swears that he never paid any water rents, because he had not the means.

(3d) The appellants' answer claims, further, that, in 1861, Mrs. Lathrop made an agreement with her brothers, John and William Batty, to advance Mr. Lathrop means to build

two houses on the shop lot; and that he should contribute the labor and receive all the profits; and that these prospective profits should be applied to pay the debt of Mrs. Lathrop on the house lot; that the two houses were built and sold at a large profit, but the Batties had failed to account. These houses on the shop lot were sold, one in 1865 and one in 1867. The respondent's first mortgage was made in 1863, and recorded in 1864. A verbal agreement by the owner of the shop lot that he would apply the profits to be derived from the sale of that property to the payment of the cost of the house lot, would have been of questionable validity against a mortgagee coming in with a lien on the house lot before the shop lot was sold. But it is evident that no such agreement was ever made. The transaction of erecting two houses on the shop lot was entirely distinct from the transfer of the house lot.

(4th) What, then, was the arrangement under which Lathrop worked on the two houses built on the shop lot? Mr. Batty says that Lathrop was to have one-third of the profits made on the houses; that Lathrop was well paid for his work, and that no money was made on the houses. He states the agreement relative to the two houses on the shop lot as independent of the transaction about the house lot. In this, Batty is confirmed by the testimony of his sister, Mrs. Lathrop, one of the appellants.

(5th) Lathrop was fully paid for his labor on the two houses. It is very evident that if the agreement was as Lathrop says, that he should contribute the labor and Batty the materials, it was not carried out, and that, as Batty says, he paid Lathrop more than he could have hired others for.

(6th) We have so far discussed the case on the theory that there was a trust in the purchase of the house, and that John and William Batty took it, in 1858, merely as security. But we do not by any means admit this claim. William Batty swears that the arrangement was a sale for $3,000, paid, with an agreement to convey the property to Lathrop for its cost to Batty. Mrs. Lathrop seems to have

no knowledge of any arrangement with her brothers about the house lot. She certainly does not support her husband's story. The deed states the consideration as $3,000. It is probable that the whole was paid before the deed to the Batties, and that the title was left standing in the name of Bishop for fear of creditors. Lathrop is not to be believed. Batty's testimony, given in Florida, without memoranda, agrees with the public records and undisputed facts, and is entitled to credit.

(7th) Mr. and Mrs. Lathrop knew of the giving of the first mortgage at or soon after the time it was given. Had they then set up their claim or notified the respondent of it, the respondent could have protected itself, for the Batties were responsible then. The appellants should not have permitted the Batties to use their record title to defraud innocent lenders. When they acquiesced in the first loan, they thereby justified the respondent in relying on Batty's title for a second mortgage.

(8th) Whatever property Mrs. Lathrop ever had, she derived from her husband. As early as 1855 there were judgments against him which are still unsatisfied. The conveyance of Lathrop's property, either to his wife or to the Batties, was a fraud on Lathrop's creditors. The property was left in the name of Bishop nearly three years, although Lathrop says he paid Bishop's loan in a little more than one year from the making of the deed to Bishop.

He who comes into equity, must come with clean hands. They are not entitled to the interference of the court in their behalf against the legal record title of the respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

This bill was exhibited to foreclose two mortgages, one of which was given by William and John Batty, and the other by the same John Batty alone. In both of them the complainant was the mortgagee. The defence set up is,

that although the absolute title to the mortgaged premises was and is vested in these mortgagors, or in one of them, and although such is the title as it appears upon the record in the clerk's office, yet, nevertheless, the real owner, in equity, was the defendant, Mrs. Lathrop, and that as she was openly in the possession and enjoyment of the property both when these encumbrances were executed and for a long time antecedently, that the complainant, from that fact, was put upon inquiry, and that if it had discharged that duty, it would have discovered that its mortgagors were mere trustees, having no right to execute these instruments or either of them.

This is not a case in which it is necessary to look closely into the doctrine that the visible occupation of land will, under certain conditions, put a person acquiring an interest in such lands from a third person, invested with the apparent title, on inquiry with respect to the rights and equities of the person so in possession. This doctrine, as affected and, perhaps, limited, by our registry laws, would, in a proper connection, present an interesting subject for examination, but in its relation to the present case, such examination would be out of place, because the conduct of Mrs. Lathrop, the defendant, has been such, with regard to the complainant, as to remove this case quite out of the operation of such doctrine. The chancellor was of opinion, and I altogether concur in that opinion, that the silence of Mrs. Lathrop and her husband, when they were informed that the first mortgage had been given, and their failure to object to the act, or to notify the complainant of the situation of the equitable title, was conduct such as would naturally lead to the conclusion that the mortgagors were the absolute owners of the property, and that consequently Mrs. Lathrop is not in a position to complain that they were dealt with on that footing. To acquiesce for such a length of time in the first mortgage, was to accredit the Batties with the right to mortgage, and, in view of such acquiescence, the complainant was relieved from the duty of making inquiry. It may

'be reasonably questioned whether, in many cases, the rule that the possession of lands being in a stranger to the documentary and record title makes it unsafe to trust to such title with implicitness, has not been pushed to an extreme so as to produce inequitable results; and it certainly seems necessary, if the rule is to retain a leaven of justice, to annex to it the qualification that the occupier of the property should be required to refrain from doing anything having an illusive tendency with respect to ownership.

On this ground, I shall vote to affirm this decree.

Decree unanimously affirmed.